# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR ROWLAND | : | |
| *Plaintiff* | : | |
| | : | |
| V. | : | CIVIL ACTION NO. 21-CV-4466 |
| | : | |
| KEVIN D. PISTRO, *et al,* | : | |
| *Defendants* | : | |

## M E M O R A N D U M

NITZA I. QUIÑONES ALEJANDRO, J.                                    NOVEMBER 29, 2021

      Arthur Rowland, a pretrial detainee incarcerated at FDC-Philadelphia ("FDC"), filed this civil action challenging the constitutionality of several conditions at the FDC. For the following reasons, the Court will dismiss the Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

## I.     FACTUAL ALLEGATIONS

      The publicly available docket for Rowland's criminal proceeding reflects that he was charged with several drug and gun related crimes in 2018 and detained pending trial. *United States v. Rowland*, Crim. A. No. 18-579-2 (E.D. Pa.). The docket reflects that he is represented by counsel and that trial is currently scheduled to commence in February 2022. *Id.* (ECF Nos. 344 & 365). Rowland is detained at the FDC pending trial.

      The Complaint names four Defendants employed at the FDC: (1) Warden Kevin D. Pistro; (2) Captain Root; (3) Lieutenant Ganzel, also identified as the Administrator of Special Investigative Services ("SIS"); and (4) Lieutenant Shannon. (ECF No. 2 at 2-3.)[1] The Defendants are sued in their individual and official capacities. (*Id.*) Rowland's allegations primarily concern

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

his placement on the Special Housing Unit ("SHU"), the conditions on that unit, and searches to which he has been subjected during his incarceration.

Rowland alleges his cell and property have been subjected to at least twenty "targeted searches and confiscations" since he arrived at the FDC on December 19, 2018, with the most recent search occurring on May 17, 2021.  (ECF No. 2 at 14.)  Rowland adds that his cell, property, and "body" were searched on three occasions while he was incarcerated on the 4 North Unit by Defendant Shannon and other officers under her command.[2]  (*Id.* at 13.)  Rowland alleges that the "targeted searches were either ordered and/or authorized by Lt. Ganzel, Capt. Root, and/or Warden Pistro."  (*Id.*)  He claims the searches violated several of his constitutional rights, including rights implicated by the searching and reading of his "legal mail and materials."  (*Id.*)

Rowland also alleges that he has been placed in the SHU due to investigations by SIS, a unit apparently run by Defendant Ganzel, and confined there beyond the thirty-day period that regulations of the Bureau of Prisons affords SIS to conduct investigations.  (*Id.* at 12.)  In February 2021, Rowland was allegedly confined in the SHU for thirty-two days pending an investigation by SIS.  (*Id.* at 13.)  He also alleges in connection with this occasion, that his "assigned cell, property and body was searched by officers," and SIS refused to compensate him for the loss of his property.  (*Id.* at 13-14.)

Most of Rowland's allegations pertain to events that occurred on May 17.  Rowland alleges that on that date, he was "confined in the [SHU] in solitary confinement, as per the orders of Lt. Ganzel and Capt. Root" due to an investigation by SIS into unspecified "rule violations."  (*Id.* at 12.)  Rowland alleges that although the thirty-day period has passed and no wrongdoing has been found, the Defendants have refused to release him back to general population.  (*Id.*)  Accordingly,

---

[2] It is not clear if these three searches are counted among the twenty "targeted searches and confiscations."

he "remain[s] unjustly confined in the SHU in solitary confinement for no justified reason; but as harassment, discrimination, which amounts to false imprisonment and unconstitutional punishment of a pretrial detainee." (*Id.*)  Rowland also alleges he has not been provided with administrative or legal process to challenge his placement. (*Id.*)

Also on May 17, 2021, Ganzel allegedly "confiscated and searched" Rowland's property, including "legal mail and materials protected by Attorney-Client Privilege." (*Id.* at 13.)  Rowland alleges that his property has not been returned to him, even though he claims he is entitled to possess it in accordance with relevant policies. (*Id.*)  He also claims that Defendant Ganzel destroyed the property and claims he was not provided "administrative or legal process" to address the "decisions to confiscate and destroy [his] property." (*Id.* at 14.)  Rowland claims that these actions "were discriminatory, and meant as harassment," and violated the First Amendment and Religious Freedom Restoration Act ("RFRA") because "religious items and materials" were among the property. (*Id.* at 13.)  He also claims various of his constitutional rights were violated because the confiscation of unspecified legal materials allegedly hindered his ability to prepare a defense in his criminal case. (*Id.*)

Rowland alleges that he has been confined in "solitary confinement" since his May 17 placement in the SHU and subjected to the following conditions:

> a. Extremely limited telephone access b. No contact visits c. Limited access to the legal computer d. Outgoing mail (personal & legal) limits e. No out-of-cell recreation (Applied to me exclusively. All others in SHU permitted one hour out-of-cell recreation Monday thru Friday) f. Solitary 24 hr. confinement (Applied to me exclusively.  All other cells in SHU double-occupied by force) g. Not provided requested legal calls h. Commissary purchases extremely limited i. No work opportunities j. Denied access to my legal materials k. Denied basic necessities (provided or purchase) l. Faulty plumbing in assigned cell (inadequate hot and/or cold water, toilet and shower inoperable limited to (3) toilet flushes per hour) m. unsanitary living conditions (cells filthy and not cleaned or sanitized prior to forced occupancy) n. worn out mattress not sanitized prior to issuance o. forced to confinement in same unsanitary cell badly in need of repairs (Applied to me exclusively. All others in SHU forced to switch cells every (18) days) p. Served

poor meals, and less than 1800 calories per day (Not permitted to purchase food from commissary) q. Not served beverages of any kind r. All mail opened, read, and photocopied; including legal mail s. Cannot watch television t. Deprived of hot water u. Meals served bb.[3] Deprived of haircuts. cc. Deprived of required hygiene and grooming supplies (har brush, hair comb, hair grease, body lotion, emory [sic] boards, chapstick, good and adequate soap, shampoo, hair conditioner, change of underclothes, skin and face creams, baby powder, amble deodorant, amble & good toothpaste, clean towels and washcloths, etc.) dd. Not permitted 8x11" white writing paper or typing paper ee. Extremely limited access to Unit Counselor, Case Manager, and other FDC staff ff. No social services whatsoever . . . gg. No email access.

(*Id.* at 14-15.)

Rowland also appears to be raising claims based on the general conditions at the FDC. He contends that his legal and personal mail is read, delayed, seized, copied, and shared with law enforcement without his consent and that his legal mail is opened outside of his presence. (*Id.* at 15.) According to Rowland, "[t]hese actions are taken by FDC mailroom staff under orders from Lt. Ganzel, Capt. Root, and Warden Pistro; who also authorizes such." (*Id.*) Relatedly, Rowland alleges that he was "forced/compelled to sign consent forms allowing FDC staff to monitor, record my personal phone calls, emails, and personal mail" and that, if he refused to sign, he would not be permitted to use the phone or receive and send mail. (*Id.*) He similarly contends that he must "click 'Agree' on a computer screen giving consent to FDC staff to monitor [his] legal computer activity and share such with law enforcement." (*Id.*) Rowland also alleges that Qur'ans are not made available, there are no Imams, halal meals are not served, and certain Muslim holidays are not observed, even though similar accommodations are made for other religions. (*Id.* at 16.)

---

[3] The lettering in the Complaint jumps from u. to bb. even though the pages are consecutively numbered according to the numbers Rowland gave them.

Based on these allegations, Rowland brings *Bivens*[4] claims for assorted constitutional violations, and claims under RFRA, 42 U.S.C. § 2000bb-1, in connection with his allegations pertaining to religion.[5]  He seeks unspecified injunctive relief and damages.  (*Id*.)

## II.   STANDARD OF REVIEW

Although Rowland has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

---

[4] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971). "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'"  *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

[5] The Complaint also refers to the Privacy Act, Civil Rights Act, Voting Rights Act, and Administrative Procedures Act.  (ECF No. 2 at 3.)  The Court cannot discern any legitimate basis for a plausible claim under these provisions, so any such claims are dismissed.  It is unclear why Rowland referred to these statutory provisions at all.  To the extent he raises a Privacy Act challenge to the disclosure of phone calls or records of his calls, he has not stated a claim for various reasons.  *See Thomas v. Seth*, Civ. A. No. 07-2203, 2008 WL 11476024, at *3 (E.D. Pa. Aug. 28, 2008) (rejecting Privacy Act challenge brought by detainee at the FDC because FDC's disclosure of recorded phone calls to the U.S. Attorney's Office fell within an exception to the Privacy Act), *aff'd*, 317 F. App'x 279 (3d Cir. 2009) (*per curiam*); *Bansal v. Pavlock*, 352 F. App'x 611, 613–14 (3d Cir. 2009) (*per curiam*) (FDC detainee's challenge to disclosure of recorded phone calls was rejected under "routine use" exception to Privacy Act: "The Department of Justice published in the Federal Register a notice that a routine use of Bureau of Prisons telephone records maintained in the system of records is disclosure to federal law enforcement agencies for law enforcement needs, including investigations and possible criminal prosecutions, in accordance with the provisions of the Federal Wiretap Act"); *see also* 5 U.S.C. § 552a(b) (provisions of Privacy Act apply to agencies, not individuals).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, Civ. A. No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Rowland is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.     DISCUSSION

Rowland brings constitutional claims against federal actors presumably pursuant to *Bivens*, which provides a judicially recognized remedy for constitutional violations committed by federal actors in limited circumstances.[6] Since *Bivens* was decided in 1971, the Supreme Court "has

---

[6] Although *Bivens* provides a remedy against federal actors, "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Ynfante v. United States*, Civ. A. No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("[A] *Bivens* claim can only be asserted against individual officials."). Accordingly, the constitutional claims against the Defendants in their official capacities are in essence claims against the United States that must be dismissed on sovereign immunity grounds. *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens*

repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200.   The Supreme Court has recognized an implied private action against federal officials in only four cases: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment; and (4) *Farmer v. Brennan*, 511 U.S. 825 (1994), which concerned a claim under the Eighth Amendment against prison officials for failure to protect a prisoner from violence by another prisoner.   *Shorter*, 12 F.4th at 371-373 ("*Farmer* made clear[] . . . that an Eighth Amendment *Bivens* remedy is available to a transgender prisoner who has been assaulted by a fellow inmate.").

Because expanding *Bivens* is "a 'disfavored' judicial activity," *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200. That inquiry involves determining whether the case presents a new context for a *Bivens* claim that has not been recognized by the Supreme Court and, if so, asking whether "special factors counsel hesitation in expanding *Bivens*." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020); *see also Abbasi*, 137 S. Ct. at 1857-58. "Whether a *Bivens* claim exists in a particular context is 'antecedent to the

---

claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Bell v. Rossott*, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

other questions presented.'" *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (quoting *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017)).

Where a *Bivens* remedy exists, a plaintiff must allege the personal involvement of each defendant to state a claim.  *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)); *see also Mark v. Patton*, 696 F. App'x 579, 582 (3d Cir. 2017) (relying on *Barkes* in the *Bivens* context).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316.  "Particularly after *Iqbal,* the connection between the supervisor's directions and the constitutional deprivation must be sufficient to 'demonstrate a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)).  This link is established where the allegations of the complaint reflect that the supervisor gave directions that the supervisor knew or should have known would cause others to violate the plaintiff's constitutional rights.  *Id.*

### A.  Placement in SHU

Rowland brings *Bivens* claims based on his current and prior placements in the SHU and duration of time spent there.  In *Bistrian*, the United States Court of Appeals for the Third Circuit held that no *Bivens* claim exists for an alleged Fifth Amendment violation based on placement of a pretrial detainee in punitive detention.[7]   *Bistrian*, 912 F.3d at 94.   Relevant here, *Bistrian* involved a claim brought by a pretrial detainee at the FDC based on allegations that he was "punitively detained" in the SHU for three months based on an alleged violation of telephone use rules and/or an investigation into that violation.[8]  *Id.* at 83-85 & n.6.  The *Bistrian* Court concluded that special factors did not warrant an extension of *Bivens* to this context based on the following reasoning:

> Unlike Bistrian's failure-to-protect claim, which relates to a specific and isolated event, a punitive-detention claim more fully calls in question broad policies pertaining to the reasoning, manner, and extent of prison discipline. The warden and other prison officials have—and indeed must have—the authority to determine detention policies, to assess the endless variety of circumstances in which those policies may be implicated, and to decide when administrative detention is deserved and for how long.  *See Sandin v. Conner*, 515 U.S. 472, 482, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995) (observing, in the § 1983 context, that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile [prison] environment" and thus should limit "the involvement of federal courts in the day-to-day management of prisons").  Detention policies and their application cannot be helpfully reviewed as *Bivens* claims.  "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" because the problems "are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987) (citation omitted).  The Bureau of Prisons, not the judiciary, has the "expertise, planning, and the commitment of resources" necessary for the difficult task of running a correctional facility.  *Id.* at 84-85, 107 S. Ct. 2254.  Consequently, the task of prison administration "has been

---

[7] The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement, while the Due Process Clause of the Fifth Amendment provides similar protection against unconstitutional punishment for pretrial detainees in federal custody.  *See Bistrian*, 912 F.3d at 91.  Since Rowland is a pretrial detainee who has not been convicted or sentenced, the Eighth Amendment is inapplicable here.

[8] This was the detainee's fourth placement in the SHU.  Previously, he was placed in the SHU for seven weeks based on allegations he violated telephone use rules, for a year based on "security concerns," and for a short placement less than a month after his second stay for the detainee's "safety" and an "investigation." *Bistrian*, 912 F.3d at 83-85.

committed to the responsibility of [the legislative and executive] branches, and separation-of-powers concerns counsel a policy of judicial restraint." *Id.* at 85, 107 S.Ct. 2254.   Ruling on administrative detention policy matters would unduly encroach on the executive's domain.  *See Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) ("It is a rule grounded in necessity and common sense, as well as authority, that the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily will not interfere." (citation omitted)).

*Bistrian*, 912 F.3d at 94-95 (footnotes omitted).

Rowland's constitutional claims challenging his placement in the SHU and the length of his detention in the SHU are indistinguishable in any meaningful way from the claims at issue in *Bistrian*.[9]  Accordingly, *Bivens* does not provide a cause of action for Rowland to challenge the constitutionality his placements in the SHU in February and May of 2021, or on any other date. *Bivens* likewise does not provide a remedy to the extent Rowland bases these claims on alleged violations of BOP policy.  *See Islaam v. Kubicki*, 838 F. App'x 657, 661 (3d Cir. 2020) (*per curiam*) ("To allow a damages remedy for violations of BOP policy that do not amount to unconstitutional conduct would exceed the bounds of judicial function.") (citing *Mack*, 968 F.3d at 317).  Since Rowland's claims are not cognizable under *Bivens*, the Court will dismiss them with prejudice because Rowland cannot cure the defects in these claims.

### B.  Conditions in the SHU

The Third Circuit has not precedentially addressed the existence of a *Bivens* claim challenging the constitutionality of a prisoner's conditions of confinement.  In a recent non-precedential opinion, the majority declined to imply a "cause of action to sue federal prison officials for unconstitutional conditions of confinement," *Mammana v. Barben*, 856 F. App'x 411, 415 (3d Cir. 2021), over the dissent of Judge Shwartz, who concluded that a federal prisoner could

---

[9] Rowland's entirely conclusory characterization of these events as discrimination and harassment, without any supporting facts, do not alter this conclusion.  To the extent these allegations are intended to raise equal protection claims, they are addressed below.

sue a corrections officer "based upon inhumane conditions of confinement that violate the Eighth Amendment right to be free from cruel and unusual punishment." *Id.* at 416 (Shwartz, dissenting). Assuming that a *Bivens* remedy could be available to challenge the conditions in which Rowland was confined in the SHU, a question the Court declines to address at the screening stage of this litigation, Rowland has not stated a plausible claim.

In a series of sentence fragments, Rowland lists at least twenty-six conditions in the SHU. (ECF No. 2 at 14-15.)  He does not develop his claims based on these conditions beyond noting them in a list.  However, a plaintiff must present sufficient facts to develop their claims to allege a plausible constitutional violation.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *Stokes v. Carney*, Civ. A. No. 21-1435, 2021 WL 4477185, at *8 (E.D. Pa. Sept. 29, 2021) (where plaintiffs "offered at most only one or two sentences of undeveloped allegations about the conditions on [the unit]" they failed to allege "sufficient facts about the extent, duration, and effect of those conditions from which this Court could infer that the challenged conditions were objectively serious, such that inmates housed on [the unit] were deprived of a basic human need or that their health or safety was at risk" in violation of the Constitution).

 More importantly, Rowland has not tied the conditions in the SHU to the named Defendants in any meaningful way.  Absent allegations describing how the Defendants were personally responsible for the conditions in the SHU, Rowland has not stated a claim against them. Accordingly, these claims will be dismissed.

### C.  Searches of Cell, Person, and Property

Rowland alleges that he was repeatedly subjected to searches of his cell, his person, and his property.  "[P]risoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *see Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells." (citing *Hudson*, 568 U.S. at 529)).  Additionally, searches of an inmate's body, including strip searches, may be conducted if performed in a reasonable manner.  *See Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (citing *Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979); *Jones v. Luzerne County Corr. Facility*, Civ. A. No. 10-359, 2010 WL 3338835, at *8 (M.D. Pa. 2010) ("[I]nmates do not have a right to be free from strip searches.").

Rowland describes various "targeted searches" of his cell and seizures of his property, but he has no legitimate expectation of privacy in his cell that would give rise to a protectable interest under the Constitution.  *See Barndt v. Wenerowicz*, 698 F. App'x 673, 678 (3d Cir. 2017) (*per curiam*) ("[T]he Fourth Amendment does not apply to searches of prison cells or seizures of property within them.").  His general allegations that his "body" was searched do not, without additional facts, suggest a plausible basis for a Fourth Amendment or other constitutional violation. Further, Rowland has not alleged the Defendants' personal involvement in most of these searches. Rowland generally alleges that the "targeted searches were either ordered and/or authorized" by Defendants Ganzel, Root and Pistro, and that Defendant Shannon and "other officers under her command" conducted three of these searches.  (ECF No. 2 at 13.)  These allegations are the kind of "naked assertions" that are essentially restatements of the elements of supervisory liability; they are "not entitled to the assumption of truth."  *Santiago*, 629 F.3d at 132.  Although Rowland has adequately alleged Defendant Ganzel's personal involvement in the May 17 search, (ECF No. 2 at 13), none of the allegations about the searches conducted on this date give rise to a plausible claim,

including allegations that Ganzel searched unspecified legal or confidential materials.  *See Kinard v. Bakos*, 566 F. App'x 102, 103 (3d Cir. 2014) (*per curiam*) (affirming dismissal on screening of complaint alleging two correctional officers searched plaintiff's cell and that plaintiff observed one of the correctional officers "open an envelope labeled 'legal mail confidential' and read the enclosed materials").  So, even assuming a *Bivens* remedy exists in this context, Rowland has not stated a plausible claim.

### D.  Denial of Access to Courts and Right to Counsel

Rowland alleges that the seizure and/or destruction of his legal property and interference with his legal mail denied him access to the courts and violated his right to counsel. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury."  *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.  *Christopher*, 536 U.S. at 415. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.  *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).

"Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, Civ. A. No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).  With respect to restrictions on attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'" *Id.* at 184 (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)).  Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'"  *Id.* at 187 (quoting *Bell*, 441 U.S. at 547).  A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

The only allegation that could potentially be construed as relevant here is Rowland's assertion that the "seizure and reading of [his] legal mails and materials . . . hinders [his] ability to prepare a defense to pending criminal prosecution."  (ECF No. 2 at 13.)  Rowland does not provide any more specific allegation about what was seized or read, or how his defense has been hampered, especially since he is represented by counsel in his criminal proceeding.  Accordingly, he has not adequately alleged an actual injury sufficient to state a plausible denial of access claim.  *See Kinard v. Bakos*, 566 F. App'x 102, 104 (3d Cir. 2014) (*per curiam*) ("The rule that an actual injury must be shown applies when a claim regarding access to the courts is grounded on a prison's alleged interference with legal mail."); *Shelton v. Crawley*, 548 F. App'x 744, 746 (3d Cir. 2013) (*per curiam*) (affirming dismissal of claim that officer "illegally searched [prisoner's]

cell and destroyed legal mail from the court and from his lawyers" where plaintiff did not allege actual injury and was able to pursue the denial of access lawsuit); *Prater*, 542 F. App'x at 137 n.4 ("[A]ppointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" (quoting *Peterkin*, 855 F.2d at 1042)). Although Rowland may not be required to allege actual injury to state a claim in this context for violation of his Sixth Amendment right to counsel, the entirely conclusory nature of this allegation is also insufficient to render plausible any claim under the Sixth Amendment. Accordingly, even assuming that a cause of action exists for these claims under *Bivens*,[10] Rowland has failed to allege a plausible basis for a claim.

### E.   Seizure/Destruction of Property

Rowland also raises due process claims based on allegations that his property was seized and/or destroyed. Leaving aside Rowland's less developed, generalized allegations, the only allegation pled with any specificity against a Defendant is Rowland's assertion that Defendant Ganzel confiscated his personal property on May 17, refused to return it, and potentially destroyed it. (ECF No. 2 at 5, 13 & 14.) Rowland appears to value the unspecified property at $2,500. (*Id.* at 5.)

A prisoner's due process rights are not violated by an intentional deprivation of property where adequate post-deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A prison's internal grievance system constitutes a meaningful post-deprivation remedy

---

[10] After the Supreme Court's recent guidance in *Abassi*, courts have declined to extent *Bivens* to claims alleging denial of access to the courts. *See Dockery v. Baltazar*, Civ. A. No. 20-01676, 2021 WL 2014969, at *4 & n.37 (M.D. Pa. May 19, 2021) ("To the extent that Dockery's complaint is construed to include a First Amendment denial of access to the court's claim, courts have also declined to extend *Bivens* to like First Amendment claims, finding that they present a new context, that there exists alternative remedies, and that special factors weigh against such an extension." (citing cases)). Indeed, "the Supreme Court has never recognized a Bivens remedy under the First Amendment." *Bistrian*, 912 F.3d at 95. However, since the Third Circuit has not spoken precedentially on this issue, the Court declines to address it on screening.

for a prisoner's loss of property. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000). "The BOP has a well established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment." *Bowens v. U.S. Dep't of Just.*, Civ. A. No. 08-590, 2009 WL 3030457, at *3 (M.D. Pa. Sept. 17, 2009) (citing 28 C.F.R. §§ 542.10-542.19), *aff'd*, 415 F. App'x 340 (3d Cir. 2011) (*per curiam*); *Hathaway v. Hooper*, Civ. A. No. 11-675, 2011 WL 2078541, at *1 (M.D. Pa. May 26, 2011) ("The Bureau of Prisons' grievance procedure is considered an adequate post-deprivation remedy."). Additionally, the Federal Tort Claims Act "provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of government officials." *Velazquez v. Zickefoose*, Civ. A. No. 11-2459, 2011 WL 6339187, at *6 (D.N.J. Dec. 19, 2011).

Assuming a *Bivens* remedy exists here,[11] Rowland has not alleged a due process claim based on the loss or destruction of his property. Rowland alleges that he grieved "all" of his claims and appealed the denial of his grievances. (ECF No. 2 at 6-7.) Although he alleges that he was "never provided with any administrative or legal process whatsoever to challenge the *decisions* to confiscate and destroy my property," (*id.* at 14 (emphasis added)), that does not mean he was denied an adequate remedy after the confiscation to compensate him for the deprivation. In any event, if Rowland is claiming that post-deprivation remedies were not available to him, it is not clear from his Complaint as he has not developed those allegations with sufficient factual specificity to render his claims plausible. Accordingly, these claims will be dismissed.

**F.  Claims Based on Religion**

---

[11] Post *Abassi*, courts have declined to extend *Bivens* to this context as well, although the Third Circuit has not yet spoken precedentially. *Louis-El v. Ebbert*, 448 F. Supp. 3d 428, 441 (M.D. Pa. 2020) (declining to extent *Bivens* to inmate's Fifth Amendment claim based on "withholding of his personal property"); *see also Bossio v. Spaulding*, Civ. A. No. 20-1777, 2021 WL 4123975, at *4 (M.D. Pa. Sept. 9, 2021) ("[P]rison administration is a special factor precluding the extension of *Bivens* to Plaintiff's Fifth Amendment due process claim").

Rowland also brings claims under the Free Exercise clause of the First Amendment and RFRA based on the destruction of unspecified property of a religious nature and the unavailability of certain religious practices or items at the FDC. (ECF No. 2 at 13 & 16.) The Third Circuit has held that *Bivens* may not be extended to Free Exercise claims, so Rowland's Free Exercise claims are subject to dismissal on that basis. *See Mack*, 839 F.3d at 305 ("[N]either the Supreme Court nor this Court has ever extended *Bivens* to Free Exercise claims. In view of RFRA's broad protections for religious liberty, we decline to do so here."). "To establish a prima facie case under RFRA, [a plaintiff] must allege that the government (1) substantially burdened (2) a sincere (3) religious exercise." *Id.* at 304. "[A] substantial burden exists where (1) 'a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit;' or (2) 'the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.'" *Id.* (quoting *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007)).

Here, Rowland has not identified his religion or his religious beliefs. Nor has he explained how the loss of his property, which is not described in the Complaint, or any of the other limitations at the FDC substantially burden his sincere religious exercise. Accordingly, Rowland's undeveloped allegations do not state a plausible claim for interference with his religious rights. In any event, apart from the allegation that Defendant Ganzel was responsible for the destruction of certain religious property, there are no non-conclusory allegations as to the Defendants' personal involvement in these matters. Rowland's allegation that Warden Pistro "authorized" the numerous practices of which he complains is insufficient. (ECF No. 2 at 16.) The Court will therefore dismiss Rowland's RFRA claims.

### G. Mail/Communications

17

Rowland also brings claims based on alleged interference with, monitoring of and seizure of his mail and email communications.  (ECF No. 2 at 15.)  He also contends that his rights are being violated because he is required to consent to monitoring and recording of his personal calls, emails, computer activity, and mail if he seeks to use those means of communication and expression during his incarceration.  (*Id.*)  Rowland also alleges that legal mail is being opened outside his presence and reviewed.  (*Id.*)

Prisoners have protected First Amendment interests in both sending and receiving mail.  *See Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78, (1987).  Similarly, e-mail may be a means of exercising a prisoner's First Amendment right to communicate with friends and family.  *See Solan v. Zickefoose*, 530 F. App'x 109, 110 (3d Cir. 2013) (*per curiam*) (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)).  However, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration."  *Thornburgh*, 490 U.S. at 407 (quoting *Turner*, 482 U.S. at 85).

Regarding legal mail, a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech."  *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated in part by Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997); *see also Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech.").  A prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy."  *See, e.g. Jones*, 461 F.3d at 359 (distinguishing between "a pattern and practice" and an "explicit policy").  Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails.  *Taylor v. Oney*, 196 F. App'x. 126, 128 (3d Cir. 2006).  However, courts have found that mere isolated incidents of interference without evidence of an

improper motive, are insufficient to establish a First Amendment violation.  *See, e.g. Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a first Amendment violation.").

If a policy or practice pertaining to incoming mail impinges upon an inmate's First Amendment rights, whether pertaining to legal mail or otherwise, the Court must then consider whether it is reasonably related to legitimate penological interests under the framework established by *Turner*.  *See Jones*, 461 F.3d at 360; *see also Hamm v. Rendell*, 166 F. App'x 599, 603 (3d Cir. 2006) (*per curiam*) ("With regard to prison policy or actions affecting Hamm's incoming mail, the court should have applied the test set forth in *Turner* [] and considered whether there was a valid, rational connection between the prison regulation and a legitimate governmental interest, whether there are alternative means of exercising the right, the effect of accommodation of the right on the prison generally, and whether there are ready alternatives." (citing *Nasir v. Morgan*, 350 F.3d 366, 371-72 (3d Cir. 2003)).   If a policy concerning outgoing correspondence infringes upon an inmate's First Amendment rights, the Court asks whether the policy or regulation furthers an important or substantial government interest unrelated to the suppression of expression and whether the regulation is greater than generally necessary for the protection of that interest.  *Nasir*, 350 F.3d at 374 (citing *Procunier*, 416 U.S. at 413); *see also Thornburgh*, 490 U.S. at 414 (explaining that *Procunier* requires a "reasonableness standard" rather than a "least restrictive alternative" requirement).

Rowland's allegations at to this set of claims, as with his other claims, are highly generalized.  To the extent he is alleging a violation of his rights as a result of prison officials' ability to review his outgoing correspondence, he has not alleged a First Amendment violation because "[t]he opening and inspecting of [a prisoner's] outgoing mail is reasonably related to the

legitimate penological interest of institutional security." *Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir. 2008) (*per curiam*); *Aguiar v. Recktenwald*, Civ. A. No. 13-2616, 2015 WL 5829727, at *7 (M.D. Pa. Sept. 30, 2015) ("It is well-settled that prison personnel do not violate the First Amendment by inspecting and reading an inmate's outgoing non-legal communications." (citing cases)).   Additionally, since "[p]rison inmates have no expectation of privacy regarding their personal mail," Rowland cannot state a plausible claim based on allegations that prison officials are reviewing his personal non-legal mail or other communications. *Ali v. Howard*, Civ. A. No. 05-102, 2008 WL 4427209, at *5 (D. Del. Sept. 30, 2008), *appeal dismissed*, 353 F. App'x 667 (3d Cir. 2009) (*per curiam*); *Booze v. Wetzel*, Civ. A. No. 13-2139, 2016 WL 4191041, at *5 (M.D. Pa. Apr. 5, 2016) ("[A]lthough inmates retain the right to send and receive personal mail, in general, prisoner non-legal mail can be opened and read outside of an inmate's presence without violating a prisoner's constitutional rights."), *report and recommendation adopted*, 13-2139, 2016 WL 4158771 (M.D. Pa. Aug. 5, 2016).   Prisoners likewise have no reasonable expectation of privacy in their phone calls, so Rowland cannot state a claim based any monitoring of his calls. *See United States v. Jarmon*, 14 F.4th 268, 272 (3d Cir. 2021) (observing, in affirming denial of motion to suppress recordings of phone calls defendant made while incarcerated:  "Prisoners know they are under constant surveillance. They have no general expectation of privacy during their incarceration, including in their own cells.").   Additionally, to the extent Rowland's allegations are based on disclosure of his communications to law enforcement, he has not alleged with any specificity what communications or information was turned over nor has he provided any facts giving context to this allegation that would support a constitutional claim against the Defendants.

That leaves Rowland's allegation that staff employed in the FDC mailroom opened his legal mail, read it, delayed it, and shared it with law enforcement "under orders" from Defendants Ganzel, Root, and Pistro.  (ECF No. at 15.)  While a pattern or practice of handling a prisoner's

mail in this manner infringes upon a prisoner's First Amendment rights, Rowland's general allegation that employees in the mail room were acting under "orders" of these three Defendants is insufficient to allege their personal involvement.  More factual development would be required to establish Defendant Ganzel, Root and Pistro's liability to state a plausible claim.  *See Taylor*, 196 F. App'x at 128 (stating that the inmate must allege the "personal involvement on the part of the Defendants in the alleged pattern and practice of opening his mail").  In sum, even assuming the existence of *Bivens* claims in this context,[12] Rowland has not alleged a plausible basis for proceeding at this time on any of the claims based on matters pertaining to his mail, phone calls, or emails.

### H.  Equal Protection

Throughout his Complaint, Rowland baldly alleges that he has been subjected to harassment and discrimination.  The Court liberally construes these allegations as an attempt to raise equal protection claims on a "class of one" theory.  To state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  *Phillips v. City of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).  "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

---

[12] As in other First Amendment contexts, courts have, post-*Abassi*, declined to recognize a *Bivens* remedy for these types of claims.  *Railey v. Ebbert*, 407 F. Supp. 3d 510, 522 (M.D. Pa. 2019) ("[A]s other courts have recognized, special factors exist counseling against the expansion of *Bivens* to First Amendment claims regarding interference with mail, such as Congress' decision to not provide a damages remedy for certain violations and the financial burden on federal agencies resulting from litigation.").  Again, the Court declines to address this issue on screening given the other defects in the Complaint.

Here, Rowland claims he was the victim of harassment and discrimination. However, he has failed to allege facts showing that he was treated differently from others similarly situated. *See Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting equal protection claim when inmate did "not allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment"); *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."). Rowland's general allegations of discrimination are insufficient to state a plausible equal protection claim, assuming that such a claim is even cognizable in the *Bivens* context.

## IV.    CONCLUSION

For the reasons stated, the Court will dismiss Rowland's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1). The Court will dismiss the following claims with prejudice because the defects in those claims cannot be remedied: (1) Rowland's *Bivens* claims against the Defendants in their official capacities; (2) Rowland's claims based on his placement in the SHU; (3) Rowland's First Amendment Free Exercise claims; (4) Rowland's Fourth Amendment claims challenging the searches of his cell and the seizure of his property; and (5) Rowland's claims that officials are reviewing and/or monitoring his non-legal mail, phone calls and email. Rowland's remaining claims will be dismissed without prejudice to amendment in the event Rowland can allege sufficient facts to cure the defects identified in those claims. An Order follows that provides further instruction as to amendment.

*NITZA I. QUIÑONES ALEJANDRO, U.S.D.C.J.*

22